67  463
68   98
68  111
68  491

AMZI DODD ET AL., PROSECUTORS, v. THE STATE BOARD
OF HEALTH.

Argued November 11, 1901—Decided February 24, 1902.

1. Under section 6 of the supplement of 1885 to the Cemetery act
   (*Pamph. L., p.* 165), if the municipal authorities consent, and the
   local board of health refuses to grant permission to the location of
   a cemetery within the municipality, this is a refusal to grant consent, within the meaning of the act, and application may be made
   to the state board of health to reverse such action of the local
   authorities.
2. In hearing an application to locate a cemetery, under the above
   provision, the state board of health acts judicially, and persons
   interested have a right to be heard before that board.

On *certiorari.*

Before Justices VAN SYCKEL, FORT and GARRETSON.

For the prosecutors, *Robert H. McCarter.*

For the defendant, *Halsey M. Barrett.*

The opinion of the court was delivered by

GARRETSON, J.  Application in writing was made to the
town council and to the board of health of the town of Bloomfield praying the consent of the municipal authorities and
board of health of that town to the location of a new cemetery
in said town.  The town council passed a resolution granting
the consent, to take effect when the board of health should
have given a like consent.  The board of health refused to

grant consent, and, as for a refusal to grant consent, an appeal was taken to the state board of health. The statutory regulation of the proceedings to locate a new cemetery is contained in "A supplement to an act entitled 'An act to authorize the incorporation of rural cemetery associations and to regulate cemeteries' [Revision], approved April ninth, one thousand eight hundred and seventy-five." *Pamph. L.* 1885, *p.* 165. By the sixth section of which it is enacted "that it shall not be lawful to locate any new cemetery or burying-ground, or to enlarge any cemetery or burying-ground in this state without the consent and approval of the municipal authorities and board of health of the city, township, town or borough in which it is proposed to locate or enlarge said cemetery or burying-ground, upon application in writing for that purpose made; and in case of the refusal of the municipal authorities and local board of health to grant the same, then the person or persons making application as aforesaid may apply to the state board of health, which shall have power to reverse the decision of the local authorities and grant the application; and in case the local authorities grant the permit to locate or enlarge any cemetery or burial-ground, and the same shall be deemed objectionable by the inhabitants of the city, town, township or borough where it is proposed to locate, then ten citizens, freeholders thereof, may apply to the state board of health, which shall have power to reverse the decision of the local authorities and prohibit said location or enlargement."

It is contended on the part of the prosecutors that the state board of health, under this statute, had no jurisdiction and could not lawfully act in the matter. That when the municipal authorities (thereby meaning the town council) consented, and the local board of health refused consent to the location of the cemetery, there was not a refusal to grant consent by the "local authorities," meaning both the town council and the local board of health, within the meaning of the law, so that application might be made to the state board of health. This must necessarily involve the converse proposition that there was no granting of permission to

locate, and so no application could be made by ten freeholders of the municipality to the state board of health to reverse action granting permission, and the result is inevitable that by the opposite action of the town council and the local board of health the matter is finally disposed of and application to the state board of health prevented.

We cannot think this was the intention of the law. Both branches of the local authorities must act, and the result of that action is either a consent or refusal. If one consents and the other refuses, the cemetery cannot be located. There is, in the language of the act, a "refusal of the municipal authorities and local board of health to grant" consent; and it is upon this "decision of the local authorities" that application may be made to the state board of health. To make the consent complete the favorable action of both the council and the local board of health is necessary, and if one refuses, the decision of the local authorities is a refusal to grant consent. Both the "municipal authorities"—that is, the council and the local board of health—acted in this case, and the result of the joint action was a refusal of the consent asked; in such case the statute authorizes application to the state board of health. It further appears that the consent of the town council was granted to take effect when the board of health should have given a like consent. This was a refusal to grant consent until that time, and when the board of health refused to give consent, then both boards were refusing consent.

We think that the state board of health had jurisdiction to receive and act upon the application as upon a refusal of the local authorities to grant consent.

The action of the state board of health was to reverse the action of "the local board of health," and grant the permission asked for. Their action should have been, under the statute, "to reverse the decision" of the local authorities and grant the application, but the granting of the application upon a refusal of the local authorities to consent is a reversal of the decisions of the local authorities, and the formal statement that the action of the local board of health is reversed

is immaterial, the decision not being by the statute required to be in any special form.

But we think that the action of the state board of health cannot be sustained, for the reason that no proper hearing was given.

When the application was presented to the state board of health, it was referred to the standing committee on cemeteries, burial and transportation of the dead for investigation and report. That committee consisted of the president of the board, *ex-officio,* and two other members. An investigation of the site of the proposed cemetery was made by the medical inspector of the board and one of the members of the committee, and the result of the examination submitted to the board by the medical inspector and a hearing given by the same committee; at that hearing two members were present; the committee seems to have made a report to the board, but no other hearing was actually held by the board itself.

The board of health was acting judicially upon the application before it, and all who were interested in that application were entitled to be heard by the board in a legally organized meeting of the board. *Hutton* v. *Camden,* 10 *Vroom* 122; *Traction Co.* v. *Board of Works,* 27 *Id.* 431; *Stanley* v. *Passaic,* 31 *Id.* 392.

The delegation to a committee to examine and report upon facts was within the power of the board, but the parties were entitled to be heard by the board upon the significance of those facts, and the legal questions which the situation gave rise to.

The prosecutors were freeholders and taxpayers in the township of Bloomfield, and as such were entitled to be heard before the state board of health.

The action of the state board of health will be set aside.